# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| ANGELA A. MORIARITY, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | No. C08-3011-MWB <br><br> **REPORT AND RECOMMENDATION** |

## *I. INTRODUCTION*

The plaintiff Angela A. Moriarity seeks judicial review of a decision by an administrative law judge ("ALJ") denying her applications for Title II disability insurance ("DI") and Title XVI supplemental security income ("SSI") benefits. Moriarity claims the ALJ and the Appeals Council erred in finding she was not disabled either under the Listings, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00C.3 & 12.04B, or based on substantial evidence in the record. (*See* Doc. No. 13)

## *II. PROCEDURAL AND FACTUAL BACKGROUND*

### *A. Procedural Background*

Moriarity filed applications for DI and SSI benefits, alleging a disability onset date of October 25, 2002, when she was 30 years old. (R. 61-63) She claimed she was disabled due to bipolar disorder resulting in anxiety attacks.

Moriarity's applications were denied initially and on reconsideration. Moriarity requested a hearing, and a hearing was held on May 25, 2006, before an Administrative Law Judge ("ALJ"). Moriarity was represented at the hearing by attorney F. David Eastman. Moriarity testified at the hearing, and Vocational Expert ("VE") Vanessa May also testified. (R. 258-88) On March 21, 2007, the ALJ found that although Moriarity

suffers from severe impairments resulting from her bipolar disorder, she is not disabled. (R. 16-24) Moriarity appealed the ALJ's ruling, and on January 31, 2008, the Appeals Council denied her request for review (R. 8-10), making the ALJ's decision the final decision of the Commissioner.

Moriarity filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. (Doc. No. 4) In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. Moriarity filed a brief supporting her claim on September 9, 2008. (Doc. No. 13) The Commissioner filed a responsive brief on November 4, 2008. (Doc. No. 14) The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Moriarity's claim for benefits.

## B. Factual Background

### 1. Introductory facts and Moriarity's hearing testimony

At the time of the hearing, Moriarity was 33 years old. She left school in the eleventh grade, but then received her GED. (R. 432) She worked at a variety of jobs, including as a clerk at a convenience store, at two different fast-food restaurants, as a telemarketer, at a job scraping lard at a packing plant, as a waitress at a truck stop, doing line work in a fireplace factory, and as a housekeeper for a motel. (R. 433-43) She was fired from the factory and telemarketing jobs, but she quit the other jobs. She testified she is unable to return to work at any of these jobs because of severe mental health problems. She also testified that these problems, together with carpal tunnel syndrome in her left wrist, problems with her right hand, and back pain from a car accident in 1992, prevent her from holding any job.

Moriarity stated that when she is required to deal with people, she gets "stressed out." (R. 433; *see* R. 434, 441) She feels like she is being "closed in," and it is too much

for her. (R. 434)  She gets headaches and feels depressed, and cannot get out of bed. (*Id.*; R. 438)  Her temper can get the better of her, and she will "go off on people." (R. 441)  Sometimes she cannot force herself to go to work, so she locks herself in her house, covers the windows, and hides under the covers. (R. 439, 435, 443-45)  On occasion, she has been suicidal. (R. 439-49)

Moriarity has been diagnosed with bipolar disorder. (R. 444)  She has periods when she is in a good mood, and then periods of deep depression.  When she is in a good mood, she walks her dog, plays in the yard, goes to the store, and likes to be around people.  She also gets a good night sleep. (*Id.*)  When she is depressed, her whole body "just aches and hurts." (R. 447)  She will make sure all the windows are covered up so no one can see her. (R. 445)  She sleeps three to four hours a night. (R. 444)  She locks the door and will not answer her phone.  She stays in bed, turns on the television "just for noise," and thinks about her problems. (R. 445)  She testified, "I just basically lock myself in the house and not deal with anybody or anything." (R. 466)  She has missed doctor's appointments because she could not make herself go. (*Id.*)  She stated these bipolar cycles last from one to three weeks. (R. 444, 462-63)  She is certain that if she had a job, she would have to miss more than three days of work each month because of her bipolar disorder. (R. 460)

Moriarity also has been diagnosed with ADHD, and she believes that she continues to suffer from this condition because she gets distracted easily. (R. 448-49)  Her attention span lasts from a half hour to an hour.  After that, her mind wanders. (R. 458)

At the time of the hearing, Moriarity was taking Celebrex for pain in her wrist; Naproxen for pain; Lexapro for her bipolar disorder; Ritalin for ADHD; and Amitriptyline for muscle pain relief, as a muscle relaxer, and as a sleep aid. (R. 450, 452-53)  She testified she does not suffer from any side effects from these medications (*id.*), except that Ritalin makes her "a little jittery" and nervous. (R. 454)  The medications help with her problems, but she believed her Lexapro dosage needed to be increased. (R. 451)  She

3

testified she continued to suffer the symptoms of her bipolar disorder even when taking these medications. (*Id.*) On cross-examination by the ALJ, Moriarity admitted she had had problems not taking her medications as directed "four or five years ago," but she denied any continuing problems with failing to take her medications as directed. (R. 461)

The ALJ ruled that Moriarity has no medically-determinable physical impairments, but he considered her physical impairment in determining her residual functional capacity ("RFC"). (R. 19-20) Moriarity does not dispute this ruling, but argues the ALJ's finding that she is not disabled by her severe mental health problems is not supported by substantial evidence in the record. (Doc. No. 13) Therefore, this court will focus primarily on Moriarity's mental health problems.

### 2. *Vocational expert's testimony*

The ALJ asked the VE the following hypothetical question:

> The first one would be age 33, female, has GED, past relevant work [of the plaintiff], lifting of 50 pounds occasionally, 25 pounds frequently; sitting two to three hours at a time for eight of an eight-hour day when you consider normal rest breaks and positional changes; standing up to two hours at a time for six of an eight-hour day; walking up to one mile; never climbing ladders, ropes, scaffolds. Would need a low-stress level job such as a level of three with 10 being the most stressful and one being the least stressful. Claimant would be limited to non-complex repetitive, and routine cognitive activity without serious limitation of function. Only occasional handling and lifting with left hand, no limitation with right hand. Based on this hypothetical could the claimant do any of her past relevant work?

(R. 384-85) The VE responded that the claimant could work at the telemarketing job, but none of the plaintiff's other past jobs. In addition, the claimant could perform certain light jobs such as parking lot attendant, usher, and counter clerk.

4

The ALJ then asked the VE a second hypothetical question:

> Would be age 33, female. She has a GED, past relevant work [of the plaintiff], lifting up to 50 pounds occasionally, 25 pounds frequently, sitting two to three hours at a time for eight of an eight-hour day with positional and normal breaks, positional changes, normal breaks; standing up to two hours at a time for six of an eight-hour day; walking up to one mile; never climbing ladders, ropes and scaffolds; would be able to do non-complex, repetitive, and routine cognitive activity without serious limitation of function. Only occasional handling and fingering with left hand. No limitation with right hand. Claimant would need frequent, unscheduled rest breaks and due to chronic pain syndrome, depression, mental impairment or any other reason would miss three or more days of work per month. Could the claimant do any past relevant work under that hypothetical?

(R. 467) The VE answered, "No." (*Id.*) The VE also stated the claimant would be unable to perform any other jobs. (*Id.*)

Moriarity's attorney then asked the VE to use the first hypothetical, but also assume that the claimant would not be able to have any interaction with the public, and then asked whether the claimant would be able to perform any jobs in the economy. The VE responded that although the claimant would not be able to do any of the plaintiff's past relevant work, she could perform certain unskilled, light jobs. (R. 468-69) The attorney then added a restriction that the claimant would not be able to concentrate on any one project for more than a half hour. The VE responded that under those circumstances, the claimant would not be able to perform any job. (R. 469-70)

### 3. *The ALJ's decision*

The ALJ determined that Moriarity had sufficient coverage under the Social Security Act to remain insured for DI benefits through September 30, 2006, but not thereafter. (R. 17) Thus, to recover DI benefits, she must show she was disabled on or before that date.

5

The ALJ made the following findings. Moriarity has not engaged in substantial gainful activity since her alleged disability onset date of October 25, 2002. (R. 19) She has a severe impairment from a bipolar disorder, but the impairment does not equal any listed impairment. "Since the claimant has no 'marked' deficit in any of the broad categories, her mental impairments do not meet the criteria under listing 12.04 requiring at least two marked areas of functional limitation be demonstrated." (*Id.*)

The ALJ next considered the plaintiff's RFC based on the non-severe impairments of her left forearm, wrist, and hand pain. He found she is capable of performing medium work, although she is limited to working in environments with a low stress level (level 3 on a progressive scale of 1 to 10, with 10 being the most stressful), and is further limited to performing work that is non-complex, repetitive, and routine. (R. 20)

The ALJ then discussed the following evidence concerning the effect of Moriarty's mental health impairments on her ability to work. In a psychological evaluation performed by Mark Peltan, Ph.D. on October 31, 2002, Dr. Peltan diagnosed Moriarity as suffering from bipolar disorder, attention-deficit hyperactivity disorder, and a learning disorder, with a GAF of 61. (R. 20) On a "Psychiatric Intake" form dated January 30, 2003, M.E. Lassise, M.D., Moriarity's treating psychiatrist, stated that Moriarity was doing well, and maintained her on Lexapro and individual therapy. Dr. Lassise increased the dosage of Lexapro on July 7, 2003. In a letter dated October 10, 2003, Jill Lehmann, an in-home therapist, stated that Moriarity suffered from a major depressive disorder. Moriarity voiced excessive amounts of anxiety during everyday interactions, and only remained stable when in non-stimulating and structured environments. (R. 20) In a consultative mental status evaluation performed on October 7, 2004, Dan Courtney, Ph.D. stated that Moriarity had gone off of Lexapro in December 2003, due to affordability. He diagnosed her with bipolar II disorder, depressed with melancholic features aggravated by PTSD, a personality disorder, and a GAF of 49. He stated it was likely Moriarity could benefit significantly from medication and psychotherapy. He also stated her initiative and

6

persistence were markedly impacted, and her ability to tolerate stress without considerable interpersonal friction was very limited. In 2005, Moriarity saw Dr. Lassise several times, and also Pamela E. Keller, M.D., in connection with her mental health problems, and was prescribed Paxil, Lexapro, and Zoloft. (R. 21)

The ALJ evaluated the credibility of Moriarity's statements with respect to subjective complaints and limitations, and found them not to be entirely credible. (R. 22) The ALJ stated, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id*. The ALJ concluded that Moriarity is able to return to her past relevant work as a telemarketer, and also that she can perform other jobs that exist in significant numbers in the national economy. (R. 23-24) He concluded by finding that Moriarity was not disabled at any time from October 25, 2002, through the date of the decision (i.e., March 21, 2007). (R. 24)

### 4. *The decision of the Appeals Council*

After the ALJ's decision and before the Appeals Council's decision, Moriarity's lawyer submitted into the record a form "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" completed by Dr. Lassise on April 4, 2007. (R. 427-28) Dr. Lassise rated Moriarity as having "no useful ability to function" in the following areas: maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. Dr. Lassise rated Moriarity as "unable to meet competitive standards" in the following

7

areas: maintaining attention for two hour segment; sustaining an ordinary routine without special supervision; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in a routine work setting.[1]

The Appeals Council denied Moriarity's appeal. (R. 8-10) The Council stated, "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence on the enclosed Order of Appeals Council." (R. 8) The Council noted the receipt of Dr. Lassise's form of April 4, 2007 (R. 11), but expressed no comment on or analysis of the form or any other evidence in the record.

### III.  DISABILITY DETERMINATIONS, THE BURDEN OF PROOF, AND THE SUBSTANTIAL EVIDENCE STANDARD

#### A.  Disability Determinations and the Burden of Proof

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Kirby v. Astrue*, 500 F.3d 705,

---

[1] These were the most serious two out of five possible levels of seriousness. The remaining three levels were "unlimited or very good," "limited but satisfactory," and "seriously limited but not precluded."

707 (8th Cir. 2007); *Hillier v. Social Security Admin.*, 486 F.3d 359, 363 (8th Cir. 2007); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, *supra*, 2007 WL 2593631 at *2 (citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287, 98 L. Ed. 2d 119 (1987)).

The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th

9

Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)."); *accord Kirby, supra*, 2007 WL 2593631.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley*, 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e)(1986)); *Dixon, supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving

Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

### *B. The Substantial Evidence Standard*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a

preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord*, *Page* 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline*, *supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir.

1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

## IV. DISCUSSION

Moriarity argues that the form completed by Dr. Lassise on April 4, 2007, constitutes substantial evidence in the record establishing that she is disabled. Doc. No. 13, p. 2. She submits that although the Appeals Council had this form before it when it affirmed the ALJ's decision, the Council did not give the form proper consideration because it did not make any findings or reach any conclusions concerning the impairments described in the form, as required by 20 C.F.R. § 404.1520a(e)(2).[2] *Id*. She also argues that the opinions of Dr. Lassise, her treating psychiatrist, should have been given controlling weight. *Id*., p. 7. Moriarity concludes by arguing substantial evidence in the

---

[2] At the administrative law judge hearing *and Appeals Council* levels . . . , the written decision must incorporate the pertinent findings and conclusions based on the [Psychiatric Review Technique Form]. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section (i.e., activities of daily living; social functioning; and concentration, persistence, or pace.)"

20 C.F.R. § 404.1520a(e)(2) (emphasis added)

13

record establishes both that she is disabled under the Listings and that her impairments preclude her from performing any gainful employment in the economy. *Id.*, p. 10.

The Commissioner responds by arguing generally that the record supports the ALJ's decision that Moriarity is not disabled. Doc. No. 14, p. 11. The Commissioner specifically points to reports from two consulting psychologists, Dr. Peltan and Dr. Courtney, as supporting this conclusion. The Commissioner notes that Moriarity has not always been compliant with treatment for her condition, and argues her mental impairments would be less severe if she regularly took her prescribed medications. *Id.*, pp. 11-12. Finally, the Commissioner argues the ALJ correctly determined that the plaintiff's mental impairments do not meet or equal any listed impairment, and in particular Listing § 12.04. *Id.*, p. 12.

With regard to the form completed by Dr. Lassise and submitted to the Appeals Council on April 4, 2007, the Commissioner argues the Council made it clear that it considered this evidence when it reviewed the ALJ's decision, but nevertheless still found the ALJ's decision was supported by substantial evidence on the record as a whole. *Id.* at 15. The Commissioner points out the form was completed after the ALJ's decision, and argues that although the form could be used as the basis of a new claim, it should not be considered in reviewing the existing claim. *Id.*, p. 17. Finally, the Commissioner argues that because the form was completed more than six months after the date Moriarity was last insured, September 30, 2006, it cannot be the basis of a DI claim because it is not evidence she was disabled before her insurance expired. *Id.*

There is no question that Dr. Lassise was Moriarity's treating physician. The weight to be given to the opinions of medical sources is well settled in both case law and the regulations. As the Eighth Circuit has explained:

> "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

14

> the other substantial evidence in the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citation omitted). The regulations require the ALJ to give reasons for giving weight to or rejecting the statements of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). Whether the ALJ gives great or small weight to the opinions of treating physicians, the ALJ must give good reasons for giving the opinions that weight. *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001). "The ALJ may discount or disregard such an opinion if the other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Moreover, a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement. *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996). *See also Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991) (holding that the weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements).

*Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). A treating physician's opinion ordinarily is accorded special deference, but it may be discounted or even disregarded "where a treating physician renders inconsistent opinions that undermine the credibility of such opinions[.]" *Prosch v. Apfel*, 210 F.3d 1010, 1012 (8th Cir. 2000).

In his brief, the Commissioner reviews Dr. Lassise's treatment records, and argues the doctor's "opinion regarding both the severity of the limitations due to Plaintiff's mental condition and the date back to which her limitations were at this level of severity is not supported by the doctor's own treatment records or the other medical records of evidence." Doc. No. 13, pp. 17-18. No such finding was made by the ALJ in his decision. In fact, nowhere in the form does Dr. Lassise express any opinions that contradict her records.[3] Aside from a few brief mentions of Dr. Lassise in his decision, the ALJ never evaluated or considered Dr. Lassise's opinions at all. Of course, the form completed by Dr. Lassise

---

[3] See the records of the Mental Health Center of North Iowa from January 30, 2003, through May 11, 2006. (R. 305-11, 353, 380-81, 402-15)

15

on April 4, 2007, was not considered by the ALJ because it was not submitted into evidence until after the ALJ's decision. However, the ALJ failed to consider fully Dr. Lassise's treatment notes, which are wholly consistent with the opinions the doctor expressed on the form.

The Commissioner argues the form completed by Dr. Lassise and submitted into evidence before the Appeals Council's decision should not be considered in this case because in completing this form, Dr. Lassise described Moriarity's condition as of the date of the form, which was after the ALJ's decision, and after the date Moriarity was last insured for DI benefits. This latter assertion simply is not the case. Dr. Lassise specified on the form that "[t]hese symptoms appear[ed] over time at least since March 2005." (R. 423) In completing the form, Dr. Lassise did not, however, reflect the date back to which each particular limitation described in the form relates.

As Moriarty's treating physician, Dr. Lassise's opinion regarding Moriarty's mental functional capabilities constitutes substantial evidence contrary to the Commissioner's decision. Further, Dr. Lassise's opinion provides unequivocal, overwhelming support for an immediate finding of disability and award of benefits. There is nothing in the record that detracts from the weight of the opinions expressed in the form, and certainly nothing that supports the summary rejection of this evidence by the Appeals Council. However, it is not clear from the record when the impairments described in the form affected the plaintiff's RFC to the extent indicated. Dr. Lassise's indication that Moriarty's "symptoms appear[ed] over time at least since March 2005," does not indicate with specificity when Moriarty's symptoms became so severe that they would have prevented her from performing any type of work. This is a question that must be determined by further development of the record.

## V.  CONCLUSION

Therefore, for the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[4] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be reversed, and the matter be remanded for further development of the record regarding the date on which Moriarty became disabled due to her mental impairments.

**IT IS SO ORDERED.**

**DATED** this 7th day of April, 2009.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[4] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.