**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| ANGELA A. MORIARITY,<br>Plaintiff,<br>vs.<br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br>Defendant. | No. C08-3011-MWB<br>**ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

## *I. INTRODUCTION AND BACKGROUND*

The plaintiff, Angela Moriarity, filed applications for Title II disability insurance[1] and Title XVI supplemental security income [2] benefits, alleging a disability onset date of October 25, 2002. In her applications, she claimed that she was disabled due to bipolar disorder, which causes anxiety attacks. Moriarity also claims that her attention deficit disorder, carpal tunnel syndrome in her left wrist, problems with her right hand, and back pain prevent her from obtaining employment. Moriarity's applications were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held a hearing, as requested, on Moriarity's claims on May 25, 2006. The ALJ issued a decision on March 21, 2007, which recognized that Moriarity suffers from bipolar disorder and some resulting severe impairments but found she was not disabled. On January 31, 2008, the

[1] Title II of the Social Security Act provides insurance benefits to individuals who establish that they suffer from a physical or mental disability. *See* 42 U.S.C. § 423.

[2] Title XVI of the Social Security Act provides supplemental income to individuals who are disabled while also indigent. *See* 42 U.S.C. § 1382.

Appeals Council denied her request to review the ALJ's decision, and this denial constituted a final decision of the Commissioner of Social Security ("Commissioner").

On April 24, 2008, Moriarity filed a complaint in this court seeking review of the Commissioner's decision. Doc. No. 4. The undersigned then referred the case to Chief United States Magistrate Judge Paul A. Zoss for a report and recommendation. On April 7, 2009, once the parties had briefed the case, Judge Zoss issued a report and recommendation. Doc. No. 16. In his report and recommendation, Judge Zoss found that there was overwhelming support for an immediate finding that Moriarity was disabled. However, the record was not clear as to the date of disability, and therefore, Judge Zoss recommended remanding the case for further development of the record. Neither party has filed objections to Judge Zoss's report and recommendation.

## *II. LEGAL STANDARDS*

The court reviews a magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2008); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme

Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

In this case, no objections have been filed. As a result, the court reviews the magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). The United States Supreme Court has explained that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*

*City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In applying this standard to review Judge Zoss's report and recommendation, the court must also be mindful of the standards upon which an appealed Commissioner's decision is reviewed. If appealed, the court reviews the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Page*, 484 F.3d at 1042 (quoting *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). Therefore, the court will consider whether Judge Zoss's determinations are clearly erroneous, while keeping in mind that the ALJ must have substantial evidence in support of his factual findings.

## *III. LEGAL ANALYSIS*

Judge Zoss found overwhelming evidence that Moriarity was disabled prior to her last date insured[3] but did not recommend that this court award benefits. Doc. No. 16. Judge Zoss reasoned that there was insufficient evidence of the precise date of disability and, therefore, recommended the case be remanded for further development of the record. *Id.* In reaching these findings, Judge Zoss relied primarily on Moriarity's treating psychiatrist's[4] treatment notes and a form he completed, entitled "Medical Opinion Re: Ability to do Work-Related Activities (Mental)." R. at 427-428. Dr. Lassise completed the form after the ALJ's hearing, but it was provided to the Appeals Council. Again, neither party has objected to Judge Zoss's report and recommendation.

A district court must consider evidence that was first in front of the Appeals Council, even though the ALJ clearly did not consider it. *See Flynn v. Chater*, 107 F.3d 617 (8th Cir. 1997) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). In *Riley*, the circuit explained how the court should evaluate such evidence:

> Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made. *See, e.g., Nelson v. Sullivan*, 966 F.2d [363,] 366 [(8th Cir. 1992)], and *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992). Of necessity, that means that we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had

---

3 Moriarity's last date insured was September 30, 2006.

4 Moriarity's treating physician was M.E. Lassise, M.D.

> been available for the original hearing. We consider this to be a peculiar task for a reviewing court.

*Riley*, 18 F.3d at 622; *but see EADS v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 818 (7th Cir. 1993) (finding that an ALJ's decision should not be reversed due to evidence that was first submitted to the Appeals Council—declining to follow the Eighth Circuit Court of Appeals's decision in *Nelson*, 966 F.2d 363 (8th Cir. 1992)). Because Dr. Lassise's opinions were provided to the Appeals Council through the medical opinion form but not the ALJ, this court must consider whether there is substantial evidence on the record as a whole that Moriarity is not disabled, as the ALJ had found, while speculating as to how the ALJ would have weighed the report had he had it at the hearing. *See Riley*, 18 F.3d at 622.

Had the ALJ been privy to the medical opinion form, he would have been aware of Dr. Lassise's opinions, as summarized below by Judge Zoss:

> After the ALJ's decision and before the Appeals Council's decision, Moriarity's lawyer submitted into the record a form "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" completed by Dr. Lassise on April 4, 2007. (R. 427-28) Dr. Lassise rated Moriarity as having "no useful ability to function" in the following areas: maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. Dr. Lassise rated Moriarity as "unable to meet competitive standards" in the following areas: maintaining attention for two hour segment; sustaining an ordinary routine without special supervision; making simple work-related

> decisions; performing at a consistent pace without an unreasonable number and length of rest periods; and responding appropriately to changes in a routine work setting.

Doc. No. 16. The ALJ would have needed to determine what weight to give to these findings.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) (citing *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir.2000)); *see also* 20 C.F.R. § 404.1527(d)(2). If the Commissioner does not give a "treating source's opinion controlling weight," he will consider: 1) the "[l]ength of the treatment relationship and the frequency of examination;" 2) the "[n]ature and extent of the treatment relationship;" and 3) the "[s]upportability . . . [,] [s]pecialization . . . [,] and other "factors [the claimant] or others bring to [the Commissioner's] attention." 20 C.F.R. § 404.1527(d)(2)-(6).

Here, the ALJ would have given Dr. Lassise's opinions controlling weight. First, it is undisputed that the form was "[a] treating physician's opinion regarding an applicant's impairment." *See Hamilton*, 518 F.3d at 610 (citations omitted). Second, the report was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *See id.* Dr. Lassise's opinions presented some ambiguities, which are discussed below, but were overall largely consistent with Dr. Lassise's treatment notes and the rest of the record.

Though not arguing under *Riley's* precise framework, the Commissioner claims that, even considering Dr. Lassise's opinions, there is substantial evidence to support the Commissioner's decision. First, the Commissioner argues that the form was completed

on April 14, 2007, which was long after Moriarity's last date insured of September 30, 2006. However, as Judge Zoss pointed out, Dr. Lassise also indicated in the form that Moriarity's limitations were present as far back as 2005. Still, the court recognizes that Dr. Lassise does not comment on the severity of Moriarity's limitations in 2005, which is one reason this court will remand this case for further development of the record. The Commissioner also alleges that Dr. Lassise's own records contradict the form, as Dr. Lassise indicated in his notes that medication was improving Moriarity's condition—the medication had allegedly improved Moriarity's condition in 2005, *see* R. at 411, yet Dr. Lassise's opinion in the medical opinion form does not appear to reflect that such improvements occurred. Although both of these concerns appear legitimate, they do not make Dr. Lassise's opinions "inconsistent with the other *substantial* evidence in the record." *See id.* (emphasis added). Instead, under *Riley's* framework, these concerns are ambiguities that an ALJ would have, and should, investigated.

The Code of Federal Regulations explains how the ALJ would investigate these ambiguities. The claimant has the burden to prove that she is disabled, *see* 20 C.F.R. § 404.1512(a), but the ALJ must also "develop [the claimant's] complete medical history. . . ." 20 C.F.R. § 404.1512(d); *see also Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case."). The ALJ must re-contact medical sources if the evidence "is inadequate for [the ALJ] to determine whether [the claimant is] disabled." 20 C.F.R. § 404.1512(e). In that case, the ALJ must "first re-contact [the claimant's] treating physician. . . .to determine whether the additional information [the ALJ] needs is readily available." *Id.* The ALJ is required to "seek additional evidence or clarification from [the claimant's] medical source when the report from [the] medical source contains a conflict or ambiguity that must be

resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Id.*

Pursuant to 20 C.F.R. § 404.1512(e), the ALJ would have properly followed up with Dr. Lassise had he identified conflicts or ambiguities between Dr. Lassise's treatment records and his opinions in the form. However, regardless of Dr. Lassise's response, the record as a whole does not provide substantial evidence to support the Commissioner's finding that Moriarity is not disabled, primarily because Dr. Lassise's opinions concerning Moriarity's mental functional capacity—which are in stark contrast to the ALJ's finding that Moriarity was capable of returning to past relevant work—would have been given greater weight, and therefore the case should be remanded for further development of the record.

Judge Zoss found that there was not substantial evidence on the record as a whole to support the ALJ's finding that Moriarity was not disabled and that there was overwhelming support for an immediate finding of disability and award of benefits. However, Judge Zoss found that it was not clear from the record when the impairments Dr. Lassise described, in the medical form, affected Moriarity to the extent indicated. Therefore, Judge Zoss recommended remanding the case. The court finds that Judge Zoss's findings are not clearly erroneous and affirms his report and recommendation in its entirety.

## *IV. CONCLUSION*

THEREFORE, the court **accepts** Judge Zoss's report and recommendation (Doc. No. 16) and **reverses** the Commissioner's decision that Moriarity is not disabled. The court **remands** the case for further development of the record, consistent with this opinion.

**IT IS SO ORDERED.**

**DATED** this 13th day of May, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA